# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLEVA,<br>    Plaintiff,<br>    v.<br>CROWN LINEN SERVICE, INC.,<br>    Defendant. | No. 3:14-CV-1971 (MPS) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Richard Alleva, who suffers from scoliosis, worked as a manager for Crown Linen Service, Inc., a company that launders and delivers uniforms and similar items to businesses in the healthcare and hospitality industries. When Alleva told his employer that he could no longer run the full routes of delivery drivers who were sick or on vacation by making full-day delivery runs with heavy loads because of his back, the defendant fired him. Alleva sued his former employer for alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 et seq., ("CFEPA"). The plaintiff also brought a claim for negligent infliction of emotional distress, but has withdrawn that claim. (ECF No. 24 at 1 n.1.) The defendant now moves for summary judgment and to strike certain medical evidence presented by the plaintiff.

The Court DENIES the defendant's Motion for Summary Judgment (ECF No. 20) because there are genuine issues of material fact as to whether the plaintiff is disabled, whether he could perform the essential functions of his job, whether the defendants had notice of his disability, and whether the defendant had a legitimate non-discriminatory reason for terminating the plaintiff's employment. The Court DENIES the defendant's Motion to Strike (ECF No. 26) because the Court has not found it necessary to consider the medical evidence presented by the plaintiff in making its ruling.

**II.     Legal Standards**

**A.     Summary Judgment**

Summary Judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "When viewing the evidence, the court must assess the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

The remaining counts of the plaintiff's complaint assert four claims: (1) disability discrimination under the ADA, (2) failure to accommodate under the ADA, (3) disability discrimination under the CFEPA, and (4) failure to accommodate under the CFEPA. The legal standards applicable to each claim are described below.

**B.      Count One: Disability Discrimination Under the ADA**

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)). Thus,

> to establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Id.* (quoting *Sista v. CDC Ixix N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). After the plaintiff establishes a prima facie case, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride*, 583 F.3d at 96.

**C.      Count Two: Failure to Accommodate Under the ADA**

Failing to provide a reasonable accommodation may also violate the ADA. *McMillan*, 711 F.3d at 125. To make a prima facie case, a plaintiff must show that

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Id.* at 125–26 (quoting *McBride,* 583 F.3d at 97).

3

#### D.        Counts Three and Four: Connecticut Fair Employment Practice Act

"Connecticut courts generally analyze ADA and CFEPA claims under the same standard."

*Buck v. AT & T Servs., Inc.*, No. 3:08-CV-1619 (JCH), 2010 WL 2640045, at *9 n.1 (D. Conn.

Jun. 28, 2010).

### III.    Facts

The following facts are undisputed and supported by the parties' citations to the record in

the Local Rule 56(a) statements. Crown Linen Service, Inc. ("Crown") rents and cleans linens and

uniforms. (Aff. of Thomas Goodwin, ECF No. 20-2 at ¶ 1.) The plaintiff, Richard Alleva, worked

for Crown as a "service manager." (*Id.*) In the 1990s, Alleva told the defendant's manager, Harry

Kutsukos, who later retired, about his back condition. (ECF No. 20-7 at 3–4, 31.)[1] In 2009, Thomas

Goodwin supervised Alleva in Shelton, where Alleva was one of two service managers. (ECF No.

20-2 at ¶¶ 1, 3.) According to Goodwin, Alleva's responsibilities included supervising Crown's

delivery drivers, known as "route service representatives," training the drivers, handling customer

issues, making reports, and running the drivers' routes when a driver was not at work because the

driver was on vacation, sick, or otherwise on leave, did not show up to work without explanation,

or left employment before a replacement could be found. (*Id.* at ¶¶ 1–2.) Service managers also

run routes to make up for lost delivery days, for example, if a truck breaks down or if weather

prevents a delivery. (*Id.* at ¶ 2.)

Alleva and Ben Barrett, the other service manager in Shelton, shared the supervision of

three routes and three drivers. (*Id.* at ¶ 3; ECF No. 20-9 at ¶¶ 2, 4.) If one service manager was on

vacation or on sick leave, the other service manager would be the only one at the facility to cover

---

[1] The defendant submitted excerpts of Alleva's deposition that include several page numbers on the same page. For clarity, this opinion cites the CMECF page numbers of the document.

4

the drivers' routes if necessary. (*Id.* at ¶ 10.) When Alleva would cover for a driver, he would perform the driver's responsibilities including running routes, making deliveries, and picking up soiled product. (*Id.* at ¶ 4.) Depending on the customer, the soiled product can be heavy and difficult to move. (*Id.* at ¶ 5; Aff. of Richard Alleva, ECF No. 25-1 at ¶ 15–16.) When the service manager runs a driver's full route, he must be able to lift up to fifty pounds frequently, to push and pull linen hampers up to 200 pounds frequently, to stand for long periods, to walk, to bend, to stoop, and to reach. (Service Manager Job Description, ECF No. 20-3 at 3; Dep. of Richard Alleva, ECF No. 25-2 at 37.) Sometimes running a route requires lifting 100-pound bags. (Dep. of Richard Alleva, ECF No. 20-7 at 8.) Depending on the customer, and depending on where the customer stored their soiled linens, the driver or service manager might have to navigate narrow and difficult stairs. (*Id.* at 8–10.) Assistive technology such as lift gates attached to the truck could not help Alleva to carry heavy bags through hallways or up and down stairs, although the extent to which doing so was part of Alleva's job is unclear. (ECF No. 20-2 at ¶ 11.)

Alleva gave Goodwin a doctor's note dated August 21, 2010, which stated that Alleva could lift up to fifty pounds. (ECF No. 20-4 at 2; ECF No. 20-10 at ¶ 18.) Goodwin proposed that Alleva break down heavier bags to a manageable weight, but that did not "work" because some bags contained broken glass and steak knives among the soiled product. (ECF No. 20-7 at 13–14.) There was discussion about having another individual cover Alleva's routes that contained heavy loads, although the record is unclear about what became of this. (ECF No. 20-7 at 14, 24.) In November 2012, after Alleva ran a driver's full route for several consecutive days, Alleva's doctor placed him on a thirty-pound weight restriction. (ECF No. 20-5 at 2; ECF No. 25-1 at ¶¶ 26–28.) On November 8, 2012, Alleva submitted a doctor's note stating that he could not lift more than 30

pounds because of neck and back pain (ECF No. 20-2 at ¶ 7.) On November 9, 2012, Alleva

submitted a note to the manager of human resources, Russ Ursprung, which stated:

> Russ,
> I am writing you this note to let you know that I physically can not run a full route
> any more. [sic]
> My body can not [sic] handle the lifting and stress like I could 10 years ago.
> I can handle a light special delivery or drop off.
> I am unable to fill in for a route man when on vacation or a holiday route.
> I am writing this to let you know in advance my limitations.
> I do not want to get injured and be out of work all together.
> Please let me know if there is any more information that you need from my Doctor.
> Or you can contact him yourself.
> Thanks I hope you understand.
> It is tuff [sic] when you get old.
> Rick Alleva
> Crown Milford

(ECF No. 20-2 at ¶ 7; ECF No. 20-6 at 2.) After the defendant received the notes, Goodwin called

Alleva into his office where Ursprung was on the telephone. (ECF No. 20-7 at 22; ECF No. 20-10

at ¶ 34.) Then, Crown fired Alleva on November 16, 2012. (ECF No. 20-2 at ¶¶ 12–13.)

　　　　As discussed more fully below, there is a dispute about how much of the plaintiff's time

on the job was spent running "full" routes. (*Compare* ECF No. 20-7 at 22 *with* ECF No. 25-1 at

¶¶ 12–15.) There is also a dispute about whether running full routes with heavy loads on a regular

basis was an essential function of the service manager job. (*Compare* ECF No. 20-7 at 22–23 *with*

ECF No. 25-1 at ¶¶ 31–32.) The parties dispute whether the defendant knew about Alleva's

disability and whether Alleva was disabled. (*Compare* ECF No. 20-7 at 25–26 *with* ECF No. 25-

1 at ¶¶ 21–25.) There is also a dispute about whether a reasonable accommodation was requested

or available. (*Compare* ECF No. 20-10 at ¶ 44 *with* ECF No. 25-1 at ¶¶ 19, 32–37.)

6

IV.     **Discussion**

A.      **Count One: Disability Discrimination Under the ADA**

The defendant argues that the Court should grant summary judgment because there is no genuine dispute of material fact concerning the plaintiff's disability, the essential functions of the work he performed as a service manager, the process surrounding the plaintiff's request for an accommodation, and the possible reasonable accommodations related to his lifting restrictions. (ECF No. 20 at 1–2.)

*1.     Whether the plaintiff was "disabled"*

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. "Disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). The term "major life activities," as relevant here, includes "performing manual tasks, . . . walking, standing, lifting, bending, . . . and working." 42 U.S.C. § 12102(2)(A).

Congress amended the ADA in 2008 to reject what it regarded as excessively narrow judicial interpretations of "disability." 122 Stat. 3553 (2008) (finding that *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), had led "lower courts [to] incorrectly f[i]nd in individual cases that people with a range of substantially limiting impairments are not people with disabilities."). The statute now provides that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. §

12102(4)(A). The Equal Employment Opportunity Commission ("EEOC"), which is charged with enforcing the ADA and other employment discrimination laws, has promulgated regulations further clarifying the scope of the term "disability." "While [EEOC] regulations are not binding, they provide [the Court] with guidance in interpreting the ADA." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). One such regulation provides as follows:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1); *Accord Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (noting the effect of the ADA Amendments Act of 2008).

Here, there is a genuine issue of material fact about whether the plaintiff is disabled. Alleva avers that he has a physical impairment: a metal rod in his back to correct distorted curvature of his spine due to scoliosis, which limits his ability to lift, bend, and twist. (ECF No. 25-1 at ¶ 20.) There is also evidence that Alleva's treating physician placed him on lifting restrictions because of his condition. (ECF No. 25-1 at ¶¶ 25–26.) In light of this evidence, it is unnecessary for the Court to consider the medical evidence attached as Exhibit E to the plaintiff's opposition papers, which the defendant claims was not timely disclosed during discovery. After the 2008 amendment to the ADA, scientific or medical analysis is not necessary to prove that a person is disabled. *See* 29 C.F.R. § 1630.2(j)(v) ("The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis."). The cases cited by the defendant to the contrary are inapposite because they apply the more restrictive pre-amendment standards. *See Wegner v. Upstate Farms Co-op, Inc.*, 560 F. App'x 22, 24 (2d Cir. 2014); *Troeger v. Ellenville*

*Cent. School Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013); *Cf. Parada*, 753 F.3d at 68 n.2 (2008 amendment does not apply retroactively).

The evidence cited above is sufficient for a reasonable juror to find that the plaintiff's scoliosis substantially limits his ability to perform the major life activities of bending and lifting. *See* 29 C.F.R. § 1630.2(j)(1). The plaintiff has pointed to "enough evidence to make the question whether [he] has a disability under these relaxed standards one for the jury." *Girard v. Lincoln Coll. of New England*, 27 F. Supp. 3d 289, 295 (D. Conn. 2014).[2]

> 2.   *Whether the plaintiff was otherwise qualified to perform the essential functions of his job, with or without accommodation*

The defendant's next argument is that the plaintiff was not qualified to perform the essential functions of his job, with or without reasonable accommodation. "Although a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (citing *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir.1997)).  The factors, none of which is "[u]sually . . . dispositive," include "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Id.* Determining the essential functions of a job is "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995)). "A job function may be considered essential because . . . the reason the

---

[2] The issue whether the defendant was aware of the plaintiff's disability is addressed below in the discussion of whether the defendant terminated the plaintiff because of his disability.

position exists is to perform that function; . . . because of the limited number of employees available among whom the performance of that job function can be distributed; and/or" the employee was "hired for his or her expertise or ability" in performing a "highly specialized" function. 29 C.F.R. § 1630.2(n)(2). Courts "must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 98 (2d Cir. 2009).

The written job description does not unambiguously show that driving full routes for absent drivers is an essential function of a service manager's job. The written job description states that a service manager is responsible for "[h]ands-on support of direct reports[, which] includes riding with Route Service Representatives or alone when necessary to pick up and deliver products." (ECF No. 20-3 at 2.) Service managers are also responsible for "[d]riving a company owned vehicle to and from customer stops." (*Id.*) The written job description states that the physical demands of the job include being "[c]apable of lifting up to 50 lbs frequently" and "pushing and pulling linen hampers up to 200 lbs frequently," as well as "[s]tanding for long periods, walking, bending, stooping, [and] reaching." (*Id.* at 3.)

However, the majority of the duties described in the job description do not relate to covering the routes of absent drivers. For example, a service manager is responsible for ensuring compliance with quality and safety standards, managing employees, resolving customer service issues, maintaining good relationships between the warehouse, sales, and plant operations, "up selling" products, ensuring that customers renew their contracts, developing a cohesive team in a positive work environment, promptly addressing concerns with the "fleet," and reporting work-related accidents. (*Id.* at 2.) A service manager must also know how to use a fax machine, how to use Word, Excel, and Outlook, and how "to write professional emails." (*Id.* at 2.) A service

manager preferably has at least some college education. (*Id.*) Accordingly, at best the written job description is ambiguous as to whether driving full routes for absent drivers is an essential function. It shows that some driving and lifting is required, but it does not state that navigating stairs with heavy bags, something the defendant contends is part of running full routes, is a part of the service manager's job. Further, the job description does not contain a date, and the plaintiff avers that he had never seen a job description while he was employed at Crown, which limits the relevance of the job description. (ECF No. 25-1 at ¶ 4); 29 C.F.R. § 1630.2(n)(3) ("written job descriptions" are evidence of whether a particular function is essential if "prepared before advertising or interviewing applicants for the job.").

Even if the job description suggested that the running full routes was an essential function, the defendant does not address the remaining factors that are relevant here, specifically how the job is actually performed in practice. (ECF No. 20-1 at 16–17.) For example, there is a genuine issue of material fact over the amount of time spent by service managers running full routes, as opposed to the lighter routes for which the plaintiff is not seeking an accommodation. The defendant contends that the plaintiff spent twenty percent or more of his time running full routes. (*See* ECF No. 20-7 at 22.) But the plaintiff points to evidence suggesting that running full routes was only six percent of a service manager's job; he ran full routes (as opposed to "partial routes") only sixteen days out of 252 working days a year. (*See* ECF No. 25-1 at ¶¶ 12–14.) The defendant disputes the plaintiff's characterization of these facts. (ECF No. 27 at 7 ("Alleva did not present any evidence to dispute these statistics; instead, he attempted to 'spin them' . . . .").)

Viewing the evidence in the light most favorable to the plaintiff and drawing all reasonable inferences in his favor, *Weinstock*, 224 F.3d at 41, a reasonable jury could find that the ambiguous

job description, with its emphasis on non-driving responsibilities, and the evidence of how the job

was actually performed show that running full routes was not an essential function of the job.[3]

> 3.  *Whether the plaintiff suffered adverse employment*
>     *action because of his disability*

The defendant argues that even if the plaintiff was disabled, it cannot be liable because it

was unaware of the disability. (ECF No. 20-1 at 20 (citing *Raytheon Co. v. Hernandez*, 540 U.S.

44, 54 n.7 (2003)).) The employer's decision makers must have notice of the disability for the

employer to be held liable under ADA; otherwise, discrimination cannot be "because" of a

disability. *See Grunberg v. Quest Diagnostics, Inc.*, No. CIV.A. 3:05-CV-1201V, 2008 WL

323940, at *5 (D. Conn. Feb. 5, 2008) (citing *Rodal v. Anesthesia Group of Onondaga*, 369 F.3d

113, 118 (2d Cir.2004)). *Accord Hill v. Pfizer*, 266 F. Supp. 2d 352, 260–61 (D. Conn. 2003)

(noting in analysis of "regarded as" prong of disability definition that "[t]here is no question that

decision makers at Pfizer were aware that plaintiff had suffered a bank injury, that he had been out

of work on disability, and that he had received workers' compensation benefits.").

There is adequate evidence from which a reasonable jury could conclude that the defendant

had notice of the plaintiff's disability. The plaintiff discussed his disability many times with his

supervisor, Harry Kutsukos. (ECF No. 25-1 at ¶ 21.) Kutsukos arranged to transfer the plaintiff to

a service manager position "because of [his] disability." (*Id.*) The plaintiff would often discuss his

scoliosis with two other supervisors, Dave Cross and John Gagnon, whenever his back hurt or

---

[3] Because the Court finds that there is a genuine issue of material fact as to what the
essential functions of the plaintiff's job were, the Court does not reach the issue of whether he
could perform those functions with or without accommodation. If running full routes was not an
essential function of his job, then it is irrelevant whether he could perform the function with or
without accommodation, because the defendant does not suggest that he was "otherwise [not]
qualified" to perform any other functions of his job. Likewise, the Court does not reach the issue
of whether the employer engaged in a sufficiently interactive process to determine whether the
plaintiff's alleged disability could be accommodated. *See McBride*, 583 F.3d at 101.

when he was injured on the job. (ECF No. 25-1 at ¶ 22.) The plaintiff also submitted evidence that he disclosed his scoliosis to his employer when he completed worker's compensation forms. (ECF No. 25-1 at ¶ 23.) In 2006 or 2007, the defendant required the plaintiff to complete a form verifying any medical conditions. (ECF No. 25-1 at ¶ 24.) The plaintiff "specifically disclosed on those medical forms the existence of [his] disability." (ECF No. 25-1 at ¶ 24.) In 2010, the plaintiff gave Goodwin a medical note restricting his ability to lift more than fifty pounds and Goodwin began to accommodate the plaintiff. (ECF No. 25-1 at ¶ 25.) The plaintiff discussed with him the plaintiff's disability and fused spine. (ECF No. 25-1 at ¶ 25.) In 2012 or late 2011, Goodwin told the plaintiff that he was thinking of retiring because of the physical demands of the job, and the plaintiff responded by discussing that his scoliosis made heavy lifting difficult. (ECF No. 25-1 at ¶ 25.) On November 8, 2012, Alleva submitted a doctor's note stating that he could not lift more than 30 pounds because of neck and back pain (ECF No. 20-2 at ¶ 7.) Alleva also submitted a note to Russ Ursprung explaining that he "physically [could] not run a route" because his "body [could] not handle the lifting and stress," that he was concerned that his "limitations" would cause him "to get injured," and that his doctor could provide more specific information. (ECF No. 20-6 at 2.) A reasonable jury could conclude from this evidence that the defendant and its employees who fired the plaintiff were aware of the plaintiff's alleged disability.[4]

---

[4] The defendant argues that the Court should not consider the plaintiff's affidavit that accompanies his opposition papers because it contradicts the plaintiff's deposition testimony. (ECF No. 25-1; ECF No. 27 at 3.) "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). "[S]tatements in an affidavit filed in response to a summary judgment motion [do] not create material factual disputes where none existed without such affidavit." *Id.* If the affidavit does not "direct[ly] contradict" previous deposition testimony, but is only "arguably contradictory," however, a court may not disregard the affidavit on summary judgment. *See id.* at 619–20.

In making this argument, at times the defendant mischaracterizes the plaintiff's deposition testimony. For example, the defendant asserts "Alleva admitted that he 'can't recall' what he

4.       *Pretextual Termination*

The defendant argues that it had a legitimate non-discriminatory reason to fire the plaintiff. (ECF No. 20-1 at 23–24.) If the plaintiff establishes a prima facie case, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009). There is no claim that the plaintiff was fired because he was consistently tardy, behaved inappropriately toward a coworker, or some similar reason. Rather, the defendant suggests that it fired Alleva because "[a]fter Alleva announced that he would not run routes, continuing to

---

claims he told Kutsukos . . . ." When asked in his deposition what he told Kutsukos, the plaintiff testified:

> I can't recall. It's been over 20 years, you know. I can't recall exactly what I told him, but, you know, *I told him about my situation, about my scoliosis. I have a rod in my back that limited me to do certain things.*

(ECF No. 20-7 at 32 (emphasis added).) Taken as a whole, this testimony is more consistent with the plaintiff's affidavit than contradictory. Nor is there a clear contradiction between the plaintiff's affidavit and his deposition testimony about the completeness of his interrogatory response on this subject. The defendant suggests that the plaintiff's affidavit contradicts his deposition testimony that his answer to an interrogatory about the defendant's awareness of the claimed disability was "truthful, accurate, and complete." The plaintiff's interrogatory response did not specifically mention that he had told Goodwin about scoliosis, but stated that:

> *Plaintiff states that he disclosed his scoliosis to the Defendant from the start of his employment in 1986.* In addition, he discussed his disability with his service manager in the 1990's, Harry Kutsukos. Moreover, this preexisting condition was disclosed by the Plaintiff each time he incurred an[] on-the-job injury for workers' compensation. Finally, the Plaintiff disclosed his disability on a medical update form requested by the Defendant in 2006.

(ECF No. 27 at 4 (emphasis added).) In his deposition, the plaintiff was asked whether his interrogatory response was "truthful, accurate, and complete *to the best of your ability.*" (ECF No. 25-2 at 31 (emphasis added).) His deposition testimony that it was does not so clearly contradict the additional detail provided in his affidavit to warrant disregarding the affidavit, especially because of the general statement in the interrogatory that "he disclosed his scoliosis to the Defendant from the start of his employment . . . ."

14

retain him in a Service Manager position that required the running of routes was not an option."
(ECF No. 20-1 at 24.) The defendant's argument does not reflect the record, when viewed in the
light most favorable to the plaintiff. *Weinstock*, 224 F.3d at 41. Alleva did not "announce that he
would not run routes." In his letter, he wrote "I physically can not [sic] run a full route anymore.
My body cannot handle the lifting and stress . . . . I can handle a light special delivery or drop off."
(ECF No. 20-6 at 2.)

Claiming to fire an employee because the employee is physically unable to perform a
specific task that is not an essential function (as a reasonable juror could find here) is not a
legitimate, non-discriminatory reason. This is because employers must reasonably accommodate
qualified employees by restructuring the employee's job, including reassigning nonessential duties
to other employees. *See* 42 U.S.C. § 12111(8) ("'[Q]ualified individual' means an individual who,
with or without reasonable accommodation, can perform the essential functions of the employment
position that such individual holds or desires."); *id.* at § 12111(9) ("'[R]easonable accommodation'
may include . . . job restructuring . . . ."); *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632  (6th Cir.
1999) ("'job restructuring' may include the shifting of non essential duties to other employees")
(quoting *Henchey v. Town of N. Greenbush*, 831 F. Supp. 960, 967 (N.D.N.Y. 1993)).   The
defendant argues in effect that it fired the plaintiff because the plaintiff could not perform the
essential functions of his job with or without reasonable accommodation. As discussed above,
however, there is a genuine issue of material fact about whether running full routes was an essential
function. Accordingly, the Court cannot determine at summary judgment whether the defendant
had a legitimate reason for firing the plaintiff.

The defendant cites *Norville v. Staten Island University Hospital*, 196 F.3d 89 (2d Cir.
1999) for the proposition that "[t]erminating an employee because he is physically unable to

perform certain essential functions of the job constitutes a legitimate non-discriminatory reason." (ECF No. 20-1 at 24.) In *Norville*, the court noted that the plaintiff's "physical inability to perform the job" was a legitimate, non-discriminatory reason to fire an employee who brought an age discrimination claim. *Norville*, 196 F.3d at 96–98. *Norville* does not help the defendant, however. The court's suggestion in *Norville* that physical inability to perform a particular task is a legitimate, non-discriminatory reason is premised on a common understanding that the task at issue was an essential function of the job—an issue not apparently in dispute in *Norville*. As shown, that common understanding is absent here. Because there is a genuine issue of material fact as to whether running full routes was an essential function of the job, and because the defendant has not provided any reason it fired the plaintiff other than that it believed he could not run full routes, the court cannot determine on summary judgment whether the defendant has provided a legitimate non-discriminatory reason for the plaintiff's termination.

### B.      Count Two: Failure to Accommodate Under the ADA

In Count Two, the plaintiff alleges that the defendant failed to accommodate his disability in violation of the ADA. The defendant argues that it is entitled to summary judgment on Count Two because it argues that the plaintiff is not disabled, that the defendant did not have notice of a disability, and that the plaintiff could not perform the essential functions of his job. For the reasons discussed above, the Court denies summary judgment on Count Two.

### C.      Counts Three and Four: Disability Discrimination and Failure to Accommodate Under the CFEPA

In Counts Three and Four of the Amended Complaint, the plaintiff claims that the defendant violated the Connecticut Fair Employment Practices Act by discriminating against him because of his disability and by failing to accommodate his disability. The defendant refers the Court to its previously stated arguments. (ECF No. 20-1 at 27 ("For the reasons addressed above,

just as Plaintiff cannot state a viable claim for discrimination or failure to accommodate under the ADA, he cannot do so under the CFEPA.").) The Court has already determined that the defendant has not shown that it is entitled to summary judgment on the grounds set forth above.

### D.    Motion to Strike

The defendant moves to strike the medical evidence attached to the plaintiff's opposition to the motion for summary judgment under Rule 37 of the Federal Rules of Civil Procedure. (ECF No. 26.) "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

Here, even if the plaintiff did not comply with the discovery provisions governed by Rule 37(c)(1), any such failure was "harmless." As discussed above, medical testimony is not required to show that a plaintiff is disabled. *See* 29 C.F.R. § 1630.2(j)(v) ("The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis."). Even without the medical evidence disclosed in the plaintiff's opposition papers, the defendant would not be entitled to summary judgment because, as discussed above, there is other evidence from which a reasonable jury could infer that the plaintiff is disabled.

Nevertheless, the Court will allow the defendant to take the depositions of Richard Monticciolo, M.D. and Patrick Duffy, M.D. before trial should the defendant wish to do so. The Court does not view this as a "sanction" under Rule 37, but to the extent it may be viewed as one, the plaintiff has fourteen days to object.

**V.      Conclusion**

For the reasons discussed above, the Motion for Summary Judgment (ECF No. 20) and the Motion to Strike (ECF No. 26) are DENIED. The Joint Trial Memorandum is due forty-five days from the date of this order. Should the parties wish to proceed to mediation, they shall, within fourteen days of this order, file a joint statement certifying that (1) counsel have conferred with their clients and each other, (2) the parties wish to proceed to mediation, (3) the parties are willing to participate in settlement efforts at such mediation in good faith, and (4) counsel believe that a mediation stands at least a reasonable chance of resolving the case without trial.

IT IS SO ORDERED.

      /s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            September 8, 2016

18